IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>            v.<br><br>ARMANDO RODRIGUEZ RODRIGUEZ<br>    Defendant. | CRIMINAL NO. 10-66(CCC) |

**OBJECTIONS TO PSR AND SENTENCING MEMORANDUM**

TO THE HONORABLE
CARMEN CONSUELO VARGAS DE CEREZO
UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF PUERTO RICO

COMES NOW Armando Rodriguez Rodriguez, from now on "Mr. Rodriguez" , the defendant herein, represented by the Federal Public Defender for the District of Puerto Rico, and respectfully states and prays as follows:

**I INTRODUCTION**

On April 21, 2010, a Superseding Indictment was filed against Mr. Rodriguez alleging five counts of violation to 18 USC Sec. 2251(a), one Count of violation to 18 USC Sec. 2252(a)(4)(B), and a Forfeiture allegation pursuant to 18 USC Sec. 2253. (Docket No. 18)

On December 21, 2010, Mr. Rodriguez plead guilty, before Magistrate Judge Justo Arenas, pursuant to a Rule 11(c)(1)(C) plea agreement [1] to a fixed sentence of twenty-five

---

[1] Fed. R. Of Crim. P 11(c)(1)(C) states, in relevant parts, that the parties "(C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)." Rules of Criminal Procedure, Rule 11(c)(1)(C).

years, with an agreement that it be consecutive to a fifteen year and one day sentence in a related criminal case pending in the local courts.(Docket No. 56,57,58). Magistrate Judge Justo Arenas issued a Report and Recommendation on the plea of guilty (Docket No. 59)

On December 27, 2011, this Court adopted the Magistrate Judges Report and Recommendation, and accepted Mr. Rodriguez' plea of guilty. (Docket No. 60)

The Pre Sentence Investigation Report (herein after "PSR") was prepared and filed in the present case on August 11, 2011. (Docket No. 66) The United States Sentencing Guideline calculation (herein after "USSG") reflected therein includes several enhancements[2] not agreed to by the parties in the plea agreement nor supported by the evidence currently on the record . The USSG imprisonment range assessment prepared by the United States Probation Office (herein after "USPO") is Life. On September 7, 2011, the Defendant provided notice, via e-mail, to the USPO that he objected to those enhancements and to the USPO's interpretation of the evidence which supports the enhancements.

The USPO included in the PSR several 18 USC Sec. 3553(a) factors which may warrant a variance from the USSG range, to wit: that Mr. Rodriguez was physically and verbally abused as a child by his mother, that his basic needs were not satisfied as a child, and that he was on his own at an early age, and and that there is a need for medical care[3].

The foregoing Memorandum is intended  to move the Court to follow the parties' Plea Agreement and sentence recommendation and to eliminate from the PSR information

---

[2] USPO included in the PSR a four level enhancement as to each victims in Counts One, Two, Three, Five and Six  pursuant to USSG 2G2.1(b)(4), and a two level enhancement in Count One pursuant to USSG 2G2.1(b)(5).See PSR section Offense level Computation, pages 21 et sec.

[3] PSR pages 38-39, paragraphs 150-151.

which may result in physical or other harm to Mr. Rodriguez. Pursuant to the Federal Rules of criminal Procedure Rule 32(d)(3)(C), the objected information should not be included in the PSR[4], a document which will follow Mr. Rodriguez during the term of his sentence and supervision.

We believe that a sentence of twenty five years followed by a consecutive fifteen year and one day sentence in relation the pending local case is sufficient but not greater than necessary, and complies with all the sentencing factors as established in 18 USC Sec. 3553(a). Mr. Rodriguez is currently forty-years-old. A sentence such as the one requested is very close, and in all practical terms the equivalent, to a life sentence, according to the data provided by the Center of Disease Control and Prevention of the Department of Health and Human Services[5]. The life expectancy of a Hispanic male at birth is 77.9 years of age.

## II NO EVIDENCE ON THE RECORD TO SUPPORT ENHANCEMENTS/ GOVERNMENT PRESENTING EVIDENCE OR ARGUING IN FAVOR OF THE ENHANCEMENTS IS A BREACH OF THE AGREEMENT

In the present case, the parties reached an agreement in relation to the applicable guideline calculations and sentencing recommendation. In the Plea Agreement, at page

---

[4] (3) Exclusions. The presentence report must exclude the following:
(A) any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program;
(B) any sources of information obtained upon a promise of confidentiality; and
(C) any other information that, if disclosed, might result in physical or other harm to the defendant or others. *Rules of Criminal Procedure* R 32 (d)(3)(C).

[5] Arias E. United States life tables by Hispanic origin. National Center for Health Statistics. Vital Health Stat 2(152). 2010, page 11. Also found in http://www.cdc.gov/nchs/data/series/sr_02/sr02_152.pdf

10 paragraph 9, the parties agreed "that no further adjustment or departures to the defendant's base offense level shall be sought by the parties". (Docket No. 56)

Basic contract principles apply to the construction of plea agreements. [6] Consistent with the plea agreement and contractual obligation between the parties, the Government is precluded from presenting any argument in favor of the enhancements suggested by the USPO, which are not included in the Plea Agreement.

Although "[t]he solemnization of a plea agreement does not preclude the government from disclosing pertinent information to the sentencing court," the government can "restrict the facts upon which the substantive offense is based".*United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992)

In *United States v. Munoz*, 408 F.3d 222 (5th Cir. 2005), the Fifth Circuit stated that "[a]lthough the Government has a duty to provide the sentencing court with relevant factual information . . . it may not hide behind this duty to advocate a position that contradicts its promises in a plea agreement" and concluded that the government "crossed the line to breach by affirmatively advocating for an enhancement that was not included in the plea agreement." Id. At 227. (footnotes omitted)

In *United States v. Hoey*, 508 F. 3d. 687, 692 (1st Cir. 2007) , the Court had the chance to address the definition of "sadistic or masochistic" conduct which justifies the enhancement applied by USPO in the present case. "The Guidelines do not specify what constitutes "sadistic or masochistic conduct or other depictions of violence." U.S.S.G. 2G2.2(b)(4). Webster's Third New International Dictionary defines "sadism" as "the infliction of pain upon a love object as a means of obtaining sexual release," "the satisfaction of

---

[6] *United States v. Clark*, 55 F.3d 9, 12 (1st Cir. 1995)

outwardly directed destructive impulses as a source of libidinal gratification," "a delight in physical or mental cruelty," or "excessive cruelty." It follows that an image's portrayal of sadistic conduct includes portrayal of conduct a viewer would likely think is causing pain to a depicted young child. *United States v. Myers,* 355 F.3d 1040, 1043 (7th Cir.2004)."

The Defense viewed all the video's provided by the Government as evidence in the present case. We disagree with the USPO's characterization of the events therein pertrayed, and that these events justify the four level enhancement under USSG 2G2.1(b)(4) as to all counts alleging violation of 18 USC Sec. 2251(a).

### III 18 USC 3553(A) FACTORS

The primary directive in 18 USC 3553(a) is for the court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."[7] The defense believes a sentence of twenty five years in addition to the fifteen year and one day sentence is sufficient but not greater than necessary, and complies with all the sentencing purposes.

### A. NATURE AND CIRCUMSTANCES OF THE OFFENSE

We adopt the Version of Facts as included in the Plea Agreement as an accurate depiction of the nature and circumstances of the offense. (Docket No. 56, page 17-18)

---

[7] 18 USC Sec. 3553(a)

### B. HISTORY AND CHARACTERISTICS OF MR. RODRIGUEZ

This factor will be discussed in Section IV of the present memorandum along with arguments in support of a variance as suggested by the USPO. [8]

### C. NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW AND JUST PUNISHMENT

The limiting factor in determining an appropriate sentence is the seriousness of the offense. The sentence should be proportional to the crime, or as more commonly expressed, the punishment should fit the crime. A sentence that is too lenient depreciates the seriousness of the offense and fails to promote respect for the law. By the same token, a sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect. Once again, we present to the Court that a twenty-five-year prison sentence followed by a fifteen-year-one-day imprisonment sentence in the pending local case (total imprisonment term of forty-years-one-day) is a significant term of imprisonment and in practical terms the equivalent of a life sentence with the slight chance of release at a very advanced age. A twenty five year sentence is ten years in excess of the mandatory minimum proscribed by law, a fourty year sentence exceeds the mandatory minimum by twenty-five years.

### D. AFFORD ADEQUATE DETERRENCE

Deterrence is also an important factor to consider, especially in cases of this kind involving serious criminal conduct of a kind that requires planning and deliberation. A

---

[8] USPO has identified this information as factors which may warrant a variance from the USSG range, to wit: that Mr. Rodriguez was physically and verbally abused as a child by his mother, that his basic needs were not satisfied as a child, and that he was on his own at an early age, and and that there is a need for medical care

twenty-five-year prison sentence followed by a fifteen-year-one-day imprisonment sentence in the pending local case (totaling imprisonment term of forty-years and one-day) is not a "slap on the wrist," especially for someone who, prior to this arrest, had never spent a day in jail. And of course, there are also significant lifetime collateral consequences that flow from the conviction for this offense. Mr. Rodriguez will be required to register as a sex offender. The shameful label "Sex Offender" will follow him for the rest of his life and will substantially limit his ability to work and even survive. Add to this the posibility of a lifetime under the supervision of a probation officer after his release from prison, which carries the risk of additional incarceration. It is clear that the sentence imposed in this case offers substantial deterrence both to Mr. Rodriguez and anyone else who would consider committing such a crime.

### E. PROTECT THE PUBLIC FROM FURTHER CRIMES

Mr. Rodriguez, like all human beings, has free will, and neither a psychologist, nor a judge can predict what a person will choose to do in the future. A court should exercise caution to avoid imposing a sentence for fear that a defendant could commit a crime in the future. All this being said, any risk that may exist in this regard can be addressed by lifetime supervised release, with a condition that he not have unsupervised conduct with children. Being a forty-year-old male, Mr. Rodriguez will be released in his late seventies.

### F. PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL AND VOCATIONAL TRAINING, MEDICAL CARE OR CORRECTIONAL TREATMENT

To the extent treatment is needed, a twenty-five-year prison sentence followed by a fifteen-year and one-day imprisonment sentence in the pending local case (total imprisonment term of forty-years and one-day), in addition to supervision, is

sufficient to insure that these needs will be met. The imprisonment term requested is a sufficient amount of time to receive treatment offered within the federal prison system, and to the extent further treatment is called for, it can be ordered as a condition of his supervised release. Nothing in his record suggests that he will not fully cooperate in any treatment ordered by the court upon his release, like for example, sex offender treatment and psychological treatment to deal with past and reason for incurring in the crime of conviction. Any link between Mr. Rodriguez' childhood experience and the current offense will be addressed with the treatment afforded both while in custody or while under supervision.

While at MDC-Guaynabo, Mr. Rodriguez has taken it upon himself to take as many courses as are available to pre-sentence inmates. He has taken the drug abuse course (17 weeks), card making (17 weeks), English (2 months) and bible study which he currently practices. He is currently working as a recreational coordinator.

## IV. SHOULD THE COURT DETERMINE THAT THE USSG RANGE BE CONSISTENT WITH USPO'S ASSESSMENT, DEFENSE PROPOSES VARIANCE TO REACH TWENTY FIVE YEAR IMPRISONMENT SENTENCE AGREED BY PARTIES

Mr. Rodriguez, is a forty-year-old unemployed, divorced male. He is the father of a seventeen year old girl. His current family/professional circumstances were very different fifteen years ago. At one point in his life, he was a twenty-three-year old man, married to his sweetheart, living a prosperous life, caring for his baby daughter. What happened? How did he get to where he is today?

Mr. Rodriguez had a disadvantaged childhood. Mr. Rodriguez parents married when Ismael Rodriguez, his father, was 16 years old. They married because they became pregnant with Ismael, Mr. Rodriguez' older brother and the marriage lasted five years. Mr. Rodriguez, Sr. states that the marriage was doomed due to their young age, problems with alcohol and an unstable marriage. By the age of three, Mr. Rodriguez had suffered hunger, physical and emotional abandonment, physical danger, and emotional abuse from the person least expected, his mother. Regardless of this situation, when his parents divorced, his mother was granted custody of Mr. Rodriguez and his brother, Ismael. Mr. Rodriguez, Ismael and their mother moved far away from their father and paternal grandmother. Mr. Rodriguez, Sr. remembers that at first Mr. Rodriguez, Ismael and their mother lived in a wooden shack without electricity, running water or sewer on a lot provided to them by the government (parcelas). When Ismael was only six years old and Mr. Rodriguez was a toddler of three, the children would be found roaming around alone in the public plaza with no adult supervision.

By Mr. Rodriguez' fourth birthday he had already had two stepfathers and two sets of step siblings. This abuse and neglect lasted for approximately eight years. While living with their mother, Ismael and eventually Mr. Rodriguez, cooked and cleaned the house and cared from themselves and defended each other from the verbal and physical abuse received at the hands of their mother and her boyfriends. Ismael remembers that Mr. Rodriguez was a sick, weak child, and his mother would keep him under the fear of being beaten. Ismael also remembers that, Mr. Rodriguez almost died of pneumonia. Mr. Rodriguez, Sr. explained he would constantly go to the Family Department to request for the custody of the boys. When Mr. Rodriguez was 11 years old, both he and Ismael ran

away to live with their father. They lived in fear that the courts would make them go back to their mother

By the age of twenty three, he had graduated from high school, had completed two years of college and was gainfully employed. He progressed from sales and customer services in several companies to assistant manager and manager while employed in different companies. He had a baby girl and a loving family with whom he spent all his time.

At some point, at the age of twenty-seven, Mr. Rodriguez' life began to change. According to Mr. Rodriguez, his marriage ended when his wife became pregnant of a mutual friend, the person with whom she is currently married. He became a weekend dad. He moved into a small one-room apartment. He became depressed. His depression affected his job, so eventually he was unemployed. Mr. Rodriguez Sr. and Ismael noticed he got interested in computers as a way of socialization. He detached from the adult world. He was messy and disorganized. He began to hang out with teenagers and dress like a teenager.

When confronted by Ismael as to why he was acting the way he was, Ismael states he "went down on the floor in a fetal position and started crying and holding his head as if he was afraid of him"[9]. This event describes Mr. Rodriguez' state of mind when committing the instant offense. He had reverted to his youth.

---

[9] PSR, Docket No. 66, Page 30, third sentence *et sec.*

Since his arrest, Mr. Rodriguez has reinitiated a relationship with his mother. They are currently going through a healing process. Mr. Rodriguez would like to serve his imprisonment sentence in Devens, Massachusetts where he can receive mental health and psychosexual treatment as well as remain accessible to his mother who lives in Connecticut.

Mr. Rodriguez was never treated for mental health issues created by the experiences he had as a child nor what he suffered at twenty-seven with the dissolution of his family, and by the unwinding of his life.

## V. CONCLUSION

The length of the requested sentence, a twenty-five-year prison sentence, followed by a fifteen-year and one-day imprisonment sentence in the pending local case (total imprisonment term of forty-years and one-day) in addition to supervision, does not diminish Mr. Rodriguez' criminal conduct, the manner in which he became involved or the seriousness of his conduct. The requested sentence is consistent with the purposes of sentencing and makes it clear that Mr. Rodriguez' crime has not gone unpunished.

**WHEREFORE,** it is respectfully requested that considering the above mentioned this Court impose a sentence of 25 years upon Mr. Rodriguez, as agreed by the parties in the Plea Agreement.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 4th day of October, 2011.

**HECTOR E. GUZMAN, JR.**
**Acting Federal Public Defender**
**District of Puerto Rico**


*S/Yasmin A. Irizarry*
YASMIN A. IRIZARRY
**USDC-PR 213505**
**A.F.P.D. for Defendant**
**241 Franklin D. Roosevelt Avenue**
**Hato Rey, PR  00918-2441**
**Tel. (787) 281-4922 / Fax (787) 281-4899**
**E-mail :** yasmin_irizarry@fd.org